IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| U.S. PIPELINING LLC, a foreign limited liability company, | ) ) ) ) | Civil No. 16-00132 HG-RLP |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| JOHNSON CONTROLS, INC., a foreign corporation; ASSOCIATION OF APARTMENT OWNERS OF KAANAPALI ALII, a Hawaii nonprofit corporation; ALLANA, BUICK & BERS, a foreign corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING DEFENDANT JOHNSON CONTROLS, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF NO. 25)**

Plaintiff U.S. Pipelining LLC filed a Complaint alleging various contract and tort claims arising out of renovation work it performed at a condominium complex on Maui.  One of the Defendants, Johnson Controls, Inc., filed a motion for summary judgment on the basis that Plaintiff was not a licensed contractor pursuant to Hawaii law and is therefore statutorily precluded from recovering in a civil action.

Johnson Controls, Inc.'s Amended Motion for Summary Judgment (ECF No. 25) is **DENIED.**

## PROCEDURAL HISTORY

On March 22, 2016, Plaintiff U.S. Pipelining LLC ("Plaintiff") filed a Complaint.  (ECF No. 1).

On May 19, 2016, Defendant Johnson Controls, Inc. ("Johnson Controls") filed DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 23) and CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 24).

On May 20, 2016, Johnson Controls filed DEFENDANT JOHNSON CONTROLS, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 25) and AMENDED CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26).

On May 26, 2016, Johnson Controls filed SECOND AMENDED CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT.  (ECF No. 28).

On June 2, 2016, Johnson Controls filed NOTICE OF WITHDRAWAL OF DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT FILED MAY 19, 2016 [CM/ECF 23], CONCISE STATEMENT OF FACTS FILED MAY 19, 2016 [CM/ECF 24], AND AMENDED CONCISE STATEMENT OF FACTS FILED MAY 20, 2016 [CM/ECF 26].  (ECF No. 29).

On June 6, 2016, Plaintiff filed PLAINTIFF US PIPELINING LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31) and PLAINTIFF U.S. PIPELINING, LLC'S CONCISE

STATEMENT OF FACTS IN OPPOSITION TO DEFENDANT JOHNSON CONTROL INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 30). A declaration attached to Plaintiff's Concise Statement, entitled "DECLARATION OF JEREMY BOWMAN IN OPPOSITION TO DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT," was unsigned. (ECF No. 30-1).

On June 7, 2016, the Court notified Plaintiff of the unsigned declaration. On the same date, June 7, 2016, Plaintiff filed a second, signed, DECLARATION OF JEREMY BOWMAN IN OPPOSITION TO DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT. (ECF No. 32).

On June 21, 2016, Johnson Controls filed REPLY IN SUPPORT OF DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 43) and OBJECTIONS TO EVIDENCE SUBMITTED BY PLAINTIFF U.S. PIPELINING LLC IN OPPOSITION TO DEFENDANT JOHNSON CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 44). In its Objection, Johnson Controls requested that the Court strike the Second Declaration of Jeremy Bowman ("the Second Declaration"), or, in the alternative, that the Court disregard all changes made by the Second Declaration.

On June 24, 2016, the Court filed a Minute Order concerning the Second Declaration. The Court cautioned Plaintiff for filing an unsigned declaration and failing to seek leave of Court before submitting an amended declaration. The Court permitted the filing of the Second Declaration, denying Johnson Controls' request to strike the Second Declaration or to disregard

modifications made by the Second Declaration.  (ECF No. 45).

On July 24, 2016, Plaintiff submitted a Notice of Previously Uncited Authority via e-mail.  (ECF No. 51).

On July 25, 2016, Johnson Controls filed OBJECTION TO PLAINTIFF'S JULY 24, 2016 LR 7.8 SUBMISSION.  (ECF No. 50).

On the same date, July 25, 2016, the Court held a hearing on Johnson Controls' Amended Motion for Summary Judgment.  (ECF No. 51).  At the hearing, the Court instructed Plaintiff to file the Notice of Previously Uncited Authority by July 26, 2016.  The Court permitted Johnson Controls to file substantive objections to Plaintiff's notice by July 29, 2016.  (Id.)

On July 26, 2016, Plaintiff filed U.S. PIPELINING, LLC'S NOTICE OF ADDITIONAL AUTHORITIES.  (ECF No. 52).  The filing did not include copies of the authorities cited.

On July 29, 2016, Johnson Controls filed OBJECTION TO PLAINTIFF'S ADDITIONAL EXHIBITS IN OPPOSITION TO MOTION [CM/ECF 52].  (ECF No. 53).

On the same date, July 29, 2016, the Court filed a Minute Order instructing Plaintiff to file the additional authorities referenced in the Notice filed on July 26, 2016 by August 1, 2016.  The Court allowed Johnson Controls to file substantive objections to Plaintiff's notice by August 2, 2016. (ECF No. 54).

On August 1, 2016, Plaintiff filed U.S. PIPELINING, LLC'S FILING OF ADDITIONAL AUTHORITIES.  (ECF No. 55).

On August 2, 2016, Johnson Controls filed OBJECTION TO PLAINTIFF'S ADDITIONAL EXHIBITS IN OPPOSITION TO MOTION [CM/ECF

52, 55].   (ECF No. 56).


## BACKGROUND

**The Kaanapali Alii Renovation Project**

On December 15, 2014, Defendant Association of Apartment Owners of Kaanapali Alii ("the AOAO") hired Defendant Johnson Controls, Inc. ("Johnson Controls") as a general contractor to renovate the Kaanapali Alii condominium complex on the island of Maui.  (Strickler Decl. at ¶ 2, ECF No. 28-1; Ex. A of Johnson Controls' Second Amended CSF, ECF No. 28-2).  Johnson Controls is a large, multi-state construction company.  (Bowman Second Decl. at ¶ 4, ECF No. 32).  The scope of the renovation work at the Kaanapali complex was extensive.  Johnson Controls was tasked with overseeing the installation of a new central cooling plant, a new heating, ventilation, and air conditioning system, lighting fixtures, rooftop solar panels, and upgrading the plumbing and sewer systems.  (Ex. A of Johnson Controls' Second Amended CSF at pp. 9-15).

According to Plaintiff U.S. Pipelining LLC ("Plaintiff"), in February 2015, Ron Young ("Young"), a manager for Johnson Controls, telephoned Jeremy Bowman ("Bowman"), chief operating officer for Plaintiff.  (Bowman Second Decl. at ¶ 4).  Plaintiff is a Pennsylvania-based company that provides "the specialty contracting service of rehabilitating damaged and worn-out piping without the need [to] access the existing pipe from the outside."  (Id. at ¶ 2).  Plaintiff states that it holds licenses in four

States and performs specialized pipelining work across the country, often under the license of another contractor. (Id. at ¶ 11).  Bowman states Young apprised him of Johnson Controls' renovation contract with the AOAO and indicated that the contract required work on approximately 480 vertical stacks of piping. (Id. at ¶¶ 4-5).

**Bowman's First Site Visit**

On February 27, 2015, Bowman states he visited the work site and met with Young and other officials from the AOAO and an engineering firm, Defendant Alana, Buick, and Bers. (Id. at ¶ 6).  Plaintiff and Johnson Controls disagree as to what was said at the meeting.  Plaintiff asserts that during the February 27, 2015 site visit, Bowman asked Young whether Plaintiff would need a license to perform its work in Hawaii. (Id. at ¶ 7). According to Bowman, Young answered "no," as Plaintiff was not going to cut or replace any pipes, and Johnson Controls would "run your [sub]contract through Dorvin Leis," Johnson Controls' plumbing contractor. (Id.)  Young attests that he "made no such statement" in response Bowman's license inquiry, "either at that time or otherwise." (Young Decl. at ¶ 4, ECF No. 43-1).

**Bowman's Second Site Visit**

On or about March 5, 2015, Bowman states he conducted a second site visit and met with one of the owners of Dorvin Leis. (Bowman Second Decl. at ¶ 8).  Based on the discussion he had with the person from Dorvin Leis, Bowman believed that Dorvin Leis was unfamiliar with Plaintiff's techniques and would be

uncomfortable with acting as a supervisor of Plaintiff's work.
(Id.)

**Bowman's Third Site Visit**

On April 6-10, 2015, according to Bowman, he conducted a
third site visit to the Kaanapali Alii complex.  (Id. at ¶ 10).
During the visit, Plaintiff's representatives were allowed to
inspect some, but not all, of the pipes that were to be
renovated.  (Id.)  Bowman states he met with Young at the site.
According to Bowman, Young told him that Plaintiff would not be
working under Dorvin Leis' contract, but under a direct contract
with Johnson Controls.  (Id. at ¶ 11).  Plaintiff contends that
Young told Bowman for a second time that Plaintiff would not need
a license to work in Hawaii, that Johnson Controls "would take
care of any licensing issues," and that Plaintiff "would be
working 'under the umbrella' of [Johnson Controls'] licensing."
(Id. at ¶ 12).  Young denies making any of the statements that
Bowman attributes to him.  (Young Decl. at ¶¶ 5-6).

Bowman attests that he did not challenge Young's alleged
statements, as "[m]uch of U.S. Pipelining's work concerns pipes
that are part of another larger scope of work, such that it is
common for U.S. Pipelining to work under the licensing of another
contractor."  (Bowman Second Decl. at ¶ 11).

**The Subcontract Between Plaintiff and Johnson Controls**

On April 30, 2015, Plaintiff, through Bowman, signed a
Subcontract with Johnson Controls to rehabilitate the Kaanapali
Alii complex's sewage pipes.  (Ex. B of Strickler Decl., ECF No.

7

28-5).  The Subcontract contained a section that discussed
Plaintiffs' obligations with respect to complying with applicable
laws and regulations.  Section 1.7, entitled "Compliance with
Applicable Laws" provided:

> Subcontractor shall comply with all applicable federal,
> state and local laws, ordinances and codes and all
> lawful orders, rules and regulations thereunder.
> Subcontractor shall, without additional expense to
> Contractor, obtain all licenses and permits required
> for the prosecution of the Work. Contractor makes no
> express or implied representations concerning the
> applicability of any prevailing wage requirements to
> the Work to be performed under this Subcontract, and
> Subcontractor shall be liable to Contractor for any
> prevailing wage assessments against Contractor in
> connection with Subcontractor's Work unless
> specifically waived in writing by Contractor.

(Id. at p. 5, ¶ 1.7).

The subcontract also contained two merger clauses.  The
first merger clause stated that the Subcontract and its
attachments "constitute the entire and integrated understanding
and agreement . . . and supersedes all prior understandings,
representations, communications and agreements, whether written
or verbal."  (Id. at p. 1).  The second merger clause applied
similar language, providing that "[t]his Subcontract shall
constitute the entire and only agreement between the parties  . .
. [,] superseding any previous agreements or understandings."
(Id. at p. 11, ¶ 7.10).

Pursuant to the Subcontract, Plaintiff began its work at the
Kaanapali Alii complex.  (Bowman Second Decl. at ¶ 14).
Plaintiff did not obtain a contractor license from the State of
Hawaii.  (Id. at ¶ 13; Ex. A of Diwik Decl., ECF No. 28-8).  The

8

Complaint states that Plaintiff was registered to conduct business as a foreign entity in the State of Hawaii. (Complaint at ¶ 1, ECF No. 1). Johnson Controls was registered in Hawaii as a foreign profit corporation, and was licensed as both a general building contractor and specialty contractor. (Exs. A, B of Merchant Decl., ECF Nos. 30-3, 30-4); Haw. Admin. R. 16-77-28(a).

During the course of the renovation work at the Kaanapali Alii complex, a dispute arose between the Parties regarding Plaintiff's work. (Bowman Second Decl. at ¶¶ 17-20). Plaintiff avers that Johnson Controls unilaterally altered the scope of Plaintiff's work, shortened the time for completion, and restricted Plaintiff's access to the work site. (Id. at ¶ 17). In addition, the Complaint alleges that the condition of the pipes Plaintiff was contracted to rehabilitate was significantly worse than Johnson Controls represented. (Complaint at ¶¶ 36-43). According to the Complaint, the newly discovered condition of the pipes and Johnson Controls' unilateral actions caused delays and added costs to Plaintiff's work. (Id. at ¶¶ 45-51; 54). The Complaint states that the modified scope of the work required Plaintiff to hire third-party contractors to conduct specialized pipe cleaning work that Plaintiff was not capable of performing. (Id. at ¶¶ 52-55). Bowman attests that when Johnson Controls was presented with Plaintiff's invoices and payment requests concerning the additional work performed, it refused to pay Plaintiff and raised, for the first time, Plaintiff's status as an unlicensed contractor in the State of Hawaii. (Bowman

Second Decl. at ¶¶ 18-19).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing

party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).  The opposing party must present admissible
evidence showing that there is a genuine issue for trial. Fed. R.
Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,
1049 (9th Cir. 1995).  "If the evidence is merely colorable, or
is not significantly probative, summary judgment may be granted."
Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249-50 (1986)).

The Court views the facts in the light most favorable to the
non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872
F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist
of declarations, admissions, evidence obtained through discovery,
and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex,
477 U.S. at 324.  The opposing party cannot, however, stand on
its pleadings or simply assert that it will be able to discredit
the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec.
Serv., 809 F.2d at 630.  The opposing party cannot rest on mere
allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v. Nw.
Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When
the non-moving party relies only on its own affidavits to oppose
summary judgment, it cannot rely on conclusory allegations
unsupported by factual data to create an issue of material fact.
Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see
also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496,

502 (9th Cir. 1997).

## ANALYSIS

Defendant Johnson Controls, Inc. ("Johnson Controls") seeks summary judgment against Plaintiff U.S. Pipelining LLC ("Plaintiff"), as Plaintiff was not a licensed contractor pursuant to Hawaii law when it performed sewage pipe rehabilitation work at the Kaanapali Alii condominium complex.

## I. HAWAII'S CONTRACTOR LICENSING LAW AS A DEFENSE TO PLAINTIFF'S CLAIMS

Chapter 444 of the Hawaii Revised Statutes generally requires contractors to obtain a license before embarking on any renovation work on real property. Haw. Rev. Stat. § 444-9; Haw. Admin. R. § 16-77-4. Chapter 444's terms provide that an unlicensed contractor is precluded from suing on a contract for the reasonable value of its work. Haw. Rev. Stat. § 444-22.

Here, the Parties do not dispute that Plaintiff was not a licensed contractor pursuant to Hawaii law when it conducted the pipe rehabilitation work at the Kaanapali Alii complex.

### A. The Purpose of Hawaii's Contractor Licensing Law is to Protect the General Public

In Jones v. Phillipson, property owners alleged that an unlicensed contractor failed to complete construction of a residence. 987 P.2d 1015 (Haw. Ct. App. 1999). Among the issues

12

the Hawaii Intermediate Court of Appeals addressed was whether the property owners could maintain a cause of action against the unlicensed contractor, when Chapter 444 barred the unlicensed contractor for recovering claims against the property owners. Holding in the affirmative, the appellate court emphasized that the state legislature enacted Chapter 444 to "protect the general public against dishonest, fraudulent, unskillful or unqualified contractors." Id. at 1023 (quoting Sen. Stand. Comm. Rep. No. 630, in 1957 Senate Journal, at 617).  The Jones decision made clear that members of the general public are the persons Chapter 444 was designed to protect.  Id. at 1022.  Significantly, the Jones decision indicates that the Hawaii Courts avoid interpreting Chapter 444's licensing provisions in a manner that defeats the public protection purpose of the statute.  Id. at 1023-24.

The Hawaii Supreme Court has stated that when courts are interpreting a Hawaii statute they (1) examine the context of the entire statute, (2) apply "the reason and spirit of the law," and (3) reject "every construction which leads to an absurdity." Lales v. Wholesale Motors Co., 328 P.3d 341, 354 (Haw. 2014). Statutory interpretation generally requires a court to construe the law in a manner that is consistent with its purpose.  Id. (quoting Ah Mook Sang v. Clark, 308 P.3d 911, 926 (Haw. 2013)).

A review of the legislative history and regulations concerning Chapter 444 confirms that the statute protects members of the general public from unlicensed contractors.  The

13

legislative history makes a clear distinction between the general public and contractors.

Both the House and Senate Standing Committee Reports indicate Chapter 444's licensing requirements were put in place to "ensure the health and safety of the public by requiring that contractors possess a minimum level of expertise, experience and training." Hse. Stand. Comm. Rep. No. 727-96, in 1996 House Journal, at 1309; Sen. Stand. Comm. Rep. No. 630, in 1957 Senate Journal, at 617. The Department of Commerce and Consumer Affairs' regulations provide that "primary intent of the legislature" was to safeguard the general public from "persons engaged in the construction industry, and . . . incompetent, inexperienced, unlawful, and unfair practices of contractors with whom the public contracts." Haw. Admin. R. 16-77-2.

Chapter 444's licensing framework was enacted for the benefit or protection of the general public. The legislative history, implementing regulations, and case law concerning Chapter 444 refer to the general public and contractors in dichotomous, mutually exclusive terms. <u>Jones</u>, 987 P.2d at 1022-23. Johnson Controls, as a contractor, is not a member of the general public for the purposes of Chapter 444. If the state legislature intended to protect general contractors such as Johnson Controls from subcontractors such as Plaintiff, it would have so stated. <u>See</u> <u>Lales</u>, 328 P.3d at 355. Johnson Controls may not use Chapter 444 as a defense to Plaintiff's lawsuit.

**B. Other State Courts Have Precluded Contractors from Using State Licensing Statutes as a Defense to Contract Claims**

State courts across the country have held that "the policies that bar recovery against a member of the general public do not apply in suits against licensed professionals in the same business." Gene Taylor & Sons Plumbing Co. v. Corondolet Realty Trust, 611 S.W.2d 572, 576 (Tenn. 1981) (citing Fillmore Products, Inc. v. Western States Paving, Inc., 561 P.2d 687 (Utah 1977) and other cases).  The general rule precluding recovery does not apply because "[t]he purpose of protecting the public interest by denying enforceability does not exist when dealing with claims between contractors." Teseniar v. Prof'l Plastering & Stucco, Inc., 754 S.E.2d 267, 274 (S.C. Ct. App. 2014) (citing Kennoy v. Graves, 300 S.W.2d 568 (Ky. App. 1957)). The public protection purpose behind contractor licensing must be considered when analyzing claims involving unlicensed contractors, as literal interpretations of a statute may be inconsistent with the objective of the licensing statute and the policies supporting it.  Bremmeyer v. Peter Kiewit Sons Co., 585 P.2d 1174, 1176 (Wash. 1978) (*en banc*).

Johnson Controls, as the general contractor, approached Plaintiff about possible participation in the renovation of the Kaanapali Alii condominium.  Johnson Controls entered into a contract with Plaintiff for Plaintiff to serve as a subcontractor on the project.  As the Court of Appeals of Maryland indicated, the interests of the general public are better served by placing

the burden on a general contractor to ensure that the subcontractors it chooses to hire are competent.  The Maryland Court held that the law does not render unenforceable a contract between a general contractor and a unlicensed subcontractor. Stalker Bros., Inc. v. Alcoa Concrete Masonry, Inc., 30 A.3d 885, 890 (Md. 2011).  Allowing a general contractor to escape a lawsuit on the basis that the subcontractor it deemed qualified for the job is unlicensed would require the statute to be construed "more broadly than necessary for the achievement of its purpose.  The statute should not be transformed into an unwarranted shield for the avoidance of a just obligation." Olivas v. Sibco, Inc., 535 P.2d 1339, 1341 (N.M. 1975) (internal quotations and citations omitted).

### C. Allowing Johnson Controls to Use Hawaii's Contractor Licensing Law to Defeat Plaintiff's Claims Would Lead to an Unjust Result

 The Hawaii Courts have consistently demonstrated a willingness to construe the State's professional licensing laws in a flexible manner that avoids unjust results while fulfilling the legislature's intent to protect the general public.  See, e.g., Geothermal Res. Grp., Inc. v. Puna Geothermal Venture, 216 F.Supp.2d 1133, 1138-39 (D. Haw. 2001) (finding that Chapter 444's bar against recovery did not apply, as the plaintiff's "activities may lie somewhere on the perimeter of what constitutes 'professional services.'").

 In Wilson v. Kealakekua Ranch, Ltd., an architect failed to

pay his architectural license renewal fee, and was therefore unlicensed for the duration of his work on a project.  551 P.2d 525 (Haw. 1976).  The Hawaii Supreme Court held that the contract between the architect and the client was nonetheless valid, as the technical violation of the State's licensing law did not warrant an absolute bar against an otherwise competent professional's ability to be compensated for his work.  Id. at 530.  The Supreme Court recognized that when a licensing statute is designed to protect the public against fraud and incompetence, there are instances when courts should refrain from mechanically applying the law.  The Supreme Court quoted Corbin on Contracts on treatment of a person violating a statute:

> He may have rendered excellent service or delivered goods of the highest quality, his non-compliance with the statute seems nearly harmless, and the real defrauder seems to be the defendant who is enriching himself at the plaintiff's expense. . . . Justice requires that the penalty should fit the crime; and justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to repudiating defendants.

Id. at 528 (quoting Corbin on Contracts § 1512, pp. 712-714 (1962)).

A significant aspect of the Wilson holding was the Supreme Court's finding that the architect's failure to renew his license bore little relation to his competence and skills.  Id. at 529-30.  Moreover, the Supreme Court observed that the state registration board previously determined that the architect was sufficiently qualified when he passed the initial licensing examination and character tests.  Id.

The tenuous connection between the architect's failure to renew his license and the licensing statute's purpose led the Hawaii Supreme Court to express significant concern about the ramifications that would result from a bright-line ruling precluding recovery for a technical violation.  Id.

In Shultz v. Lujan, a couple hired a contractor to repair hurricane damage to their home.  948 P.2d 558 (Haw. Ct. App. 1997).  The contractor was licensed to perform non-structural remodeling, cabinetry and fixture work.  The scope of the work at the home, however, involved structural repairs for which the contractor was unlicensed.  Id. at 559.  Notwithstanding Chapter 444's seemingly absolute bar on recovery for unlicensed contractors, the Hawaii Intermediate Court of Appeals permitted the contractor to recover payment for the portion of the work for which he was licensed.  Id. at 563.  As with the Hawaii Supreme Court in the Wilson decision, the Intermediate Court of Appeals in Shultz expressed concern that a bright-line ruling barring recovery would invite unjust and unreasonable outcomes.  The appellate court was particularly worried that a mechanical interpretation of Chapter 444 "might encourage some unscrupulous homeowners to take advantage of licensed contractors by contracting with them to do primarily licensed activity, but including therein a small amount of unlicensed activity."  Id.
The Intermediate Court of Appeals reasoned that allowing the contractor to obtain payment for the licensed work it performed would "constitute[] a just and reasonable construction of HRS §

444-22." Id.

In Hiraga v. Baldonado, a homeowner engaged a contractor to repair her home.  31 P.3d 222 (Haw. Ct. App. 2001).  Prior to entering into a contract, the contractor discussed some of the disclosures as required by Haw. Rev. Stat. § 444-25.5, such as the issuance of a surety bond and the parties' lien rights.  Id. at 225-26.  The contractor's disclosures, however, did not meet the technical requirements of Haw. Rev. Stat. § 444-25.5.  Id. at 368-69.  Haw. Rev. Stat. § 480-12 provides that contracts in violation of Haw. Rev. Stat. § 444-25.5 are void and unenforceable at law or in equity.  Id. at 228.  The Hawaii Intermediate Court of Appeals found the contract between the parties void, but permitted the contractor to recover the value of his work in quantum meruit.  The appellate court reasoned that the homeowner should not be unjustly enriched because the contractor committed a technical violation of Haw. Rev. Stat. § 444-25.5's disclosure requirements.  Id. at 229.  The appellate court also found any potential for abuse of the contractor's ability to recover in quantum meruit insignificant, as a homeowner injured by an unfair or deceptive practice has the statutory right to sue for damages sustained, and any contractor who violates the technical disclosure requirements is statutorily subject to a fine and other penalties.  Id.

The Wilson, Shultz, and Hiraga holdings demonstrate that the Hawaii Courts have consistently refused to utilize a mechanical application of the State's licensing and contracting laws where

unjust outcomes would result.  The three decisions instruct courts to apply a holistic approach when analyzing the State's professional licensing scheme.  The Supreme Court's approach serves the legislature's intent of protecting the general public and disincentivizes abuse of the law.

Johnson Controls relies upon the Hawaii Supreme Court's decision in <u>Butler v. Obayashi</u> to support its position that Chapter 444 operates as an absolute bar to Plaintiff's claims. The <u>Butler</u> opinion, however, addressed a straightforward question of whether a homeowner's knowledge of a contractor's unlicensed status operates as an exception to Chapter 444.  785 P.2d 1324 (Haw. 1990).  The <u>Butler</u> case did not address the complexities and policy considerations present here and in the <u>Wilson</u>, <u>Shultz</u>, and <u>Hiraga</u> decisions.  The <u>Butler</u> holding is not controlling in this case.

Allowing Johnson Controls, a multi-state general contractor, to use the State's licensing laws as an absolute defense to a subcontractor's claims could result in injustice.  Plaintiff is licensed in four States and attests that it performs specialized pipelining work across the country, often under the license of another contractor.  (Bowman Second Decl. at ¶ 11, ECF No. 32). Johnson Controls sought Plaintiff out for work on the project.  A mechanical application of Chapter 444 that does not consider the purpose of the statute, the legislature's intent, and the positions of the parties, could result in a forfeiture of more than a million dollars' worth of claims to Johnson Controls'

benefit.  The state legislature could not have intended Chapter 444 to be used in such a manner.  <u>Wilson</u>, 551 P.2d at 528.

Johnson Controls may not use Hawaii's contractor licensing law as a defense to Plaintiff's contract and tort claims in this case.


<u>**CONCLUSION**</u>

## I. Johnson Controls' Objection to Plaintiff's Filing of Additional Authorities

Johnson Controls objects to Plaintiff's initial submission and subsequent filing of additional authorities.  Johnson Controls argues that Plaintiff's authorities should be stricken or disregarded, as (1) Plaintiff initially submitted the notice of additional authorities less than 24 hours before the hearing on Johnson Controls' amended motion for summary judgment, and (2) Plaintiff's subsequent filing of the notice failed to include copies of the actual authorities referenced, as required by District of Hawaii Local Rule 7.8.

The authorities have been filed.  The objections of Defendant Johnson Controls have been considered.  In the interests of a full examination of the issues before the Court, the Court will consider the additional authorities presented by Plaintiff.  Johnson Controls' objection is **DENIED.**


## II. Johnson Controls' Amended Motion for Summary Judgment

Defendant Johnson Controls, Inc. may not use Plaintiff U.S.

Pipelining LLC's status as an unlicensed contractor as a defense. The Hawaii statute concerning contractor licensing, Haw. Rev. Stat. ¶ 444-1 *et seq.*, is designed to protect the general public, not to protect contractors from each other.

Johnson Controls' Amended Motion for Summary Judgment (ECF No. 25) is **DENIED.**

IT IS SO ORDERED.

Dated: October 31, 2016, Honolulu, Hawaii

Helen Gillmor
United States District Judge

U.S. PIPELINING LLC, a foreign limited liability company vs. JOHNSON CONTROLS, INC., a foreign corporation; ASSOCIATION OF APARTMENT OWNERS OF KAANAPALI ALII, a Hawaii nonprofit corporation; ALLANA, BUICK & BERS, a foreign corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10; Civil No. 16-00132 HG-RLP; **ORDER DENYING DEFENDANT JOHNSON CONTROLS, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF NO. 25)**

22